# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

IVY TUCKER,

            **Movant,**

   **v.**                      **Case Nos. 14-C-1303, 14-C-1304**
                                     **(Criminal Case No. 09-CR-131)**

**UNITED STATES OF AMERICA,**

            **Respondent.**

_____

## DECISION AND ORDER
_____

Pro se Movant Ivy Tucker has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, raising claims of ineffective assistance of trial counsel and appellate counsel. The government filed an answer, asserting that the motion should be denied.

## BACKGROUND[1]

On May 12, 2009, Tucker and nine co-defendants were charged with conspiracy to distribute more than one kilogram of heroin, the use of which resulted in a death on January 9, 2009. A seven-count superseding indictment, returned on June 23, 2009, re-alleged the conspiracy count against Tucker and his co-defendants and added six additional counts charging several of Tucker's co-conspirators with distribution of heroin on specific occasions during 2008 and 2009. All of Tucker's co-defendants pleaded guilty; Tucker proceeded to trial.

_____

[1] The background facts are based on the Court of Appeals decision on Tucker's direct appeal, _United States v. Tucker_, 714 F.3d 1006 (7th Cir. 2013), as augmented by the record. The Court uses "R." when citing to the docket in the underlying criminal case and "ECF No." when citing to the docket in the § 2255 action.

The prosecutor's opening statement explained that the evidence against Tucker would consist mostly of testimony from his co-conspirators, all of whom had criminal backgrounds and drug problems. After summarizing the investigation that led to Tucker's arrest, the prosecutor commented on the devastating effects of heroin, and referenced some prospective jurors' personal experiences with family members' drug abuse, which had been shared with the court during voir dire. He said, "And heroin is a highly addictive drug. It's a horrible drug. And as we all know from news accounts, and some of the people told us during jury selection, it's a drug that can kill you. It can kill you the first time you use it." (R. 584, 15.)

Tucker's trial counsel did not object to these statements.

Tucker's nine co-conspirators testified that Tucker ran a heroin distribution ring in Racine, Wisconsin, from 2008 through 2009. The jury also heard from the lead investigator on the case, Officer Jason Baranek, a twelve-year veteran of the Oak Creek, Wisconsin, Police Department and a member of the Drug Enforcement Unit.

Baranek's testimony described how his investigation of Tucker unfolded and provided context for the rest of the Government's case. Baranek explained that Oak Creek was troubled by rising heroin overdoses and related theft cases in early 2008. This trend and information obtained from users prompted Baranek to begin an investigation into the Racine County sources of that heroin.

Baranek explained that as part of the investigation, local law enforcement, working in conjunction with the Federal Drug Enforcement Administration (DEA), conducted "controlled purchases," in which a cooperating informant used government money to buy heroin from his drug source. (*Id.* at 36-37.) The individuals arrested after

2

the controlled purchase were "debrief[ed]" in an effort to uncover the source of their drug supply, the identity of any other individuals involved, any practices used to deliver the drugs, and whether any other crimes were being committed. (*Id.* at 38.) Controlled buys were made from Louis McCormick, Nevondae Perry, Destiny Merritt, William White and Charles Stuck. (*Id.* at 37, 46.) Stuck, a mid-level dealer who was cooperating with the government, made a controlled purchase of heroin from Merritt. (*Id.* at 42-43, 47.) Stuck told Baranek and two other law enforcement officers that Tucker was offering to sell heroin directly to him. (Id. at 47-48.) Based on his experiences as a member of the Drug Enforcement Unit, Baranek also provided the jury with details about the use of "stash house[s]" and other drug-trafficking practices. (*Id.* at 39-40.)

Merritt, Tucker's co-conspirator, said that he had given her cocaine in 2006, some of which she used and some of which she re-sold. (*Id.* at 63-64.) The two stayed in contact and began dating in 2008. (*Id.* at 65.) Merritt testified that Tucker paid her expenses, such as rent and car payments (*Id.* at 66-67), and in exchange Merritt sold heroin for Tucker and allowed him to store drugs in her apartment (*Id.* at 68-69). Merritt stated that she accompanied Tucker on trips where he purchased heroin, paying approximately $70,000 for a kilogram. *(Id.* at 69-70.) Merritt also testified that she supplied Stuck with heroin she received from Tucker. (*Id.* at 74.) Tucker would "front" the drugs to Merritt, and she would reimburse him once she was paid. (*Id.* at 75.) Merritt also assisted Tucker in supplying heroin to other customers. (*Id.* at 81.)

Merritt identified Ronsanta Tucker[2] as a member of Tucker's family who assisted him in the distribution of heroin. (*Id.* at 83.) She testified that Tucker got lots of money

---

[2] To avoid confusion with the movant, I refer to Ronsanta Tucker as Ronsanta.

from McCormick — she had seen him pick up $13,000 or $15,000 — and she knew that Dadra Lockridge and James Silas assisted McCormick in the distribution of heroin.  (*Id.* at 81-82.)

Lockridge, a co-conspirator, testified that she began purchasing cocaine from McCormick in early 2009, developed a romantic relationship with him and began to assist in his heroin-dealing operation, including sales to Perry. (*Id.* at 98-100.) McCormick was purchasing heroin from Tucker in April 2009, and Lockridge testified about an occasion when she helped McCormick count out $10,000, which he paid Tucker for 100 grams of heroin.  (*Id.* at 101-03.)  Lockridge helped McCormick repackage the heroin for distribution, and she knew McCormick's customers, including Jason Wood.  (*Id.* at 103-04.)  Lockridge also testified that she knew Merritt, that Merritt and Tucker had a romantic relationship, and that Tucker provided Merritt with cars for her use.  (*Id.* at 105.)

Stuck, another co-conspirator, testified that he met Merritt in January 2008 and began purchasing heroin from her shortly thereafter.  (*Id.* at 114.)  Stuck kept some of the heroin for personal use and sold the rest in South Milwaukee.  (*Id.* at 117.)  Stuck also testified that Merritt told him her boyfriend was her heroin supplier (*Id.* at 121), and that on at least one occasion Tucker accompanied Merritt when she sold to Stuck (*Id.* at 122).   Stuck described purchasing increasing amounts of heroin from Merritt from August through October of 2008.  (*Id.* at 120.)  He tried to reduce the amount of his purchases in November and December because his girlfriend was placed in a rehabilitation program, and he wanted to quit and remain with her.  (*Id.*)

4

Co-conspirator Ronsanta testified that at some point in 2008 or 2009, Tucker asked him to help sell heroin. (*Id.* at 134.) Tucker dropped off the heroin at Ronsanta's house and told him when people were expected to pick up the packages. (*Id.*) Ronsanta handed over the packages and collected the payments. (*Id.*) Ronsanta identified McCormick, White, and Perry as people who picked up heroin from his house. (*Id.* at 135.) He also indicated that Merritt was working with Tucker. (*Id.* at 137.)

McCormick testified that Tucker was his heroin supplier in 2008 and 2009. (R. 585, 5, 9.) Initially he purchased it through a "mutual friend," and later the friend introduced him to Tucker. (*Id.* at 7.) McCormick stated that he began purchasing two to three grams per week, periodically increasing the quantity until he was buying 100 grams every couple weeks, which he sold in Racine. (*Id.* at 8-10.) McCormick stated that he sometimes picked up heroin from Ronsanta. (*Id.* at 20-21.) McCormick also knew Merritt as a Tucker associate. (*Id.* at 21-22.)

McCormick said Lockridge, Jessica Detlaff, and Wood acted as heroin distributors for him. (*Id.* at 12-13.) McCormick described a drug transaction with Tucker when Wood accompanied him. Wood paid McCormick for heroin and they drove to a Racine mall where McCormick then paid the money he had received from Wood to Tucker, obtained heroin for distribution, and gave Wood his share. (*Id.* at 15-17.) McCormick sold heroin that he purchased from Tucker to George Malone, Silas, White, and Perry. (*Id.* at 17-19.) On cross-examination, Tucker's counsel questioned McCormick about the dates of his meetings with Tucker. McCormick testified that he told the DEA he first met Tucker in January or February 2008. (*Id.* at 28.)

Silas testified that he was introduced to Tucker by a friend and that he asked Tucker to supply him with heroin.  (*Id.* at 56-57.)  At first Silas was purchasing one to three grams two to three times per day, going through Ronsanta to purchase the drugs.  (*Id.* at 58-59.)  He then began purchasing one to five grams per day directly from Tucker.  (*Id.* at 59.)  Silas continued purchasing heroin from Tucker until May 2009.  (*Id.* at 61.)  Silas testified that in early 2008 he won $1,500 at a casino, and used some of the money to purchase heroin from Tucker.  (*Id.* at 59-60.)  On cross-examination, Silas indicated that the gambling win and heroin purchase occurred in January 2008.  (*Id.* at 71.)

In 2009, Wood lived in Burlington, Wisconsin, and bought heroin from McCormick.  (*Id.* at 75.)  He purchased drugs from McCormick for about 14 or 15 months from mid-2008 through mid-2009.  (*Id.* at 77.)  McCormick did not always have the drugs on hand, so Wood sometimes accompanied McCormick when he picked up heroin from Tucker.  (*Id* at 79-80.)  At times Wood drove McCormick to pick up drugs.  (*Id.* at 81.)  On one occasion, Tucker entered their car, and Wood paid McCormick for heroin he had previously purchased.  (*Id.*)  McCormick then gave the money to Tucker in exchange for more heroin, some of which was supplied to Wood.  (Id. at 81-82.)  On cross-examination, Wood testified that he probably started purchasing heroin from McCormick at the end of 2008.  (*Id.* at 85.)

Perry and White grew up together in Racine; both were heroin users and at times would loan each other heroin to avoid withdrawal.  (*Id.* at 94-95.)  White introduced Perry to Tucker, who referred Perry to Ronsanta.  (*Id.* at 96.)  Initially Perry purchased one or two gram quantities from Ronsanta, and Perry had a group he would regularly

sell to.  (*Id.* at 98.)  He would make arrangements to purchase the heroin by calling either Tucker or Ronsanta.  (*Id.* at 99.)  On cross-examination, Perry testified that between April and May 2009 he made 15 heroin purchases from Tucker; although he generally purchased a gram, two purchases were for five grams, and one was for ten grams.  (*Id.* at 102-104.)

White testified that he became familiar with Tucker as someone from the street who sold heroin.  (*Id.* at 116.)  He knew Ronsanta.  (*Id.* at 119.)  White bought heroin from Tucker, who later directed him to start buying from Ronsanta.  (*Id.* at 120.)  From time to time White also purchased heroin from Silas.  (Id. at 121.)  White was selling heroin to young people he called the "Oak Creek kids," who came to Racine from South Milwaukee, Oak Creek, and Franklin.  (*Id.* at 120.)  Prior to purchasing heroin through Tucker, White bought from McCormick.  (*Id.* at 128.)  During August 2008 he was buying through Tucker.  (*Id.* at 131.)

During his defense Tucker offered into evidence a stipulation that if called to testify, Noconnco Price — who was never charged in relation to the case — would state that he spoke with DEA investigators on January 14, 2009, identified Tucker as a heroin customer of Silas; and reported that he had seen Tucker give Silas money on one occasion.  (R. 586, 11.)  Tucker exercised his right not to testify, and the court instructed the jury that no inference of guilt could be drawn from that decision.  (*Id.* at 12.)

During closing arguments, defense counsel questioned the credibility of the Government's witnesses by implying that they had a motivation to lie in exchange for favorable plea deals.  In rebuttal, the prosecutor stated, "But we're supposed to trust that they're smart enough that they all get together somewhere, somehow — some of

these people are out, some are in jail. They're all over the place. But they all sit down shortly after their arrest and say this is what happened. And — what? All their stories are the same? It's the same guy? It's Mr. Tucker." (*Id.* at 49.)

The prosecutor also explained to the jury how their plea agreements might affect the testifying co-conspirators, saying, "They testified as to their deal. Their deal — their deal isn't made with the Government. They're still facing long prison terms. And their deal and their ultimate sentence isn't decided by the Government. It's not decided by the United States Attorney's Office. It's decided by one man. That's Judge Randa, who's sitting in here. Who's listening to this testimony. Who's examining what these witnesses say. And he'll make the ultimate determination." (*Id.* at 50.)

The prosecutor went on to add, "You know, it's one person's witness against another. And in this case it's nine witnesses against Mr. Tucker, saying that he was involved in this role, in this conspiracy. You've heard the evidence in this case. You — each and every one of you know what the truth in this case is." (*Id.* at 61.) The prosecutor utilized imagery of local children purchasing heroin from street dealers, "And he was selling it to the Oak Creek kids, as Mr. White testified to. There are all these kids coming down from Oak Creek, Franklin, South Milwaukee. You know, we know that there's an increase in heroin because we read about it every day in the paper. And these kids are going down there looking for one thing. They're looking for heroin." (*Id.* at 24.)

After closing arguments, the court instructed the jury as to the law, reminded the jury that lawyers' statements are not evidence (*Id.* at 64), and admonished the jury that Tucker's decision not to testify should not be regarded or considered by it in arriving at a

verdict (*Id.* at 66). Ultimately, the jury returned a verdict of guilty on the conspiracy count and found that the offense involved more than one kilogram of heroin. Tucker was sentenced to 480 months' imprisonment, followed by five years of supervised release. Tucker filed a timely notice of appeal on February 7, 2012.

On appeal Tucker contended that the prosecutor made numerous improper remarks that denied him his right to a fair trial under the due process clause of the Fifth Amendment to the United States Constitution. *Tucker*, 714 F.3d at 1011. He contended that the prosecutor: (1) referenced prior witness statements not in evidence; (2) improperly commented on Tucker's decision not to testify; (3) misconstrued the nature of the co-conspirators' plea agreements; and (4) improperly referenced familial experiences with heroin that jurors had shared with the court during voir dire. *Id.* at 1012. He also argued that Baranek was improperly allowed to testify as a "dual capacity" witness. *Id.* at 1011. The court of appeals affirmed Tucker's conviction in a decision issued April 30, 2013. *Id.* at 1017. Tucker filed a petition for rehearing, which the court of appeals denied on July 24, 2013. *United States v. Tucker,* No. 12-1281, docket available at www.pacer.gov (last visited Sept. 28, 2016). Tucker did not file a petition for certiorari review.

On October 17, 2014, the Clerk of Court opened two actions for § 2255 relief: 14-C-1303 (the 1303 action), which Tucker filed pro se; and 14-C-1304 (the 1304 action), which was filed on Tucker's behalf by counsel. Each § 2255 motion was accompanied by a declaration under penalty of perjury that it was placed in the prison mailing system on October 16, 2014. The two actions, both of which raise ineffective assistance of counsel claims, were consolidated into the 1303 action by the November

9

4, 2014, order of Judge Randa, and the government was ordered to file an answer to all grounds for relief presented in the consolidated action.  (ECF No. 5.)

Due to Judge Randa's unavailability, this action was transferred to me.

## ANALYSIS

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . .  may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

### *Time of Filing*

The government contends that Tucker's motion is untimely because it was not filed within one year of the date his conviction became final.  *See* 28 U.S.C. § 2255(f)(1).  The government cites *Clay v. United States,* 537 U.S. 522, 524 (2003), and states that Tucker's conviction became final on July 29, 2014, or 90 days after the Seventh Circuit affirmed his conviction and the time period expired for filing a petition for certiorari review.  (ECF No. 7, 8.)

"Finality attaches when [the Supreme Court] affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay,* 537 U.S. at 527.  As previously noted, Tucker did not file a petition for certiorari review, but he did file a request for a rehearing, so the 90-day period did not begin to run until July 24, 2013, when the Seventh Circuit denied that request.  *See* Sup. Ct. R. 13(3).  Consequently, Tucker's conviction became final 90 days later, October 22, 2013.  Accordingly, under 28 U.S.C. § 2255(f)(1), Tucker's

Case 2:14-cv-01303-LA   Filed 11/09/16   Page 10 of 25   Document 23

motion was due on or before October 22, 2014. Tucker's motions were filed before that date.[3] Therefore, the action is timely.

### Ineffective Assistance of Trial Counsel Claims

In grounds one through four of his pro se motion, Tucker contends that trial counsel was ineffective because he failed to challenge the sufficiency of the indictment; failed to review the presentence report (PSR) with Tucker; failed to make a challenge pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986); and failed to file pro se motions. The government argues that these contentions cannot be raised because Tucker did not raise them on direct appeal.

However, ineffective assistance of counsel claims can be brought for the first time on collateral review. *See Massaro v. United States,* 538 U.S. 500, 504 (2003) ("We hold that an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal."); *Vinyard v. United States,* 804 F.3d 1218, 1227 (7th Cir. 2015).

A defendant's Sixth Amendment right to effective assistance of counsel is violated when two conditions are met: first, "the defendant must show that counsel's performance was deficient," in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and second, "the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The defendant is

---

[3] Tucker's pro se § 2255 motion is deemed filed on October 16, 2014. *See Taylor v. Brown*, 787 F.3d 851, 858 (7th Cir. 2014) ("The 'prison mailbox rule' . . . provides that a prisoner's notice of appeal is deemed filed at the moment the prisoner places it in the prison mail system, rather than when it reaches the court clerk.") (citation omitted).

prejudiced when counsel's errors "were so serious as to deprive the defendant of a fair trial, a trial whose results are reliable." *Id.*

For the performance prong of the *Strickland* standard, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689. The defendant must also "establish the specific acts or omissions of counsel that he believes constituted ineffective assistance; [the court] then determine[s] whether such acts or omissions fall outside the wide range of professionally competent assistance." *Wyatt v. United States,* 574 F.3d 455, 458 (7th Cir. 2009) (citation omitted). The Court must eliminate the effects of hindsight and evaluate performance based on the attorney's perspective at the time. *See Strickland,* 466 U.S. at 689. "To overcome [the] presumption, a defendant must show that counsel failed to act 'reasonabl[y] considering all the circumstances.'" *Cullen v. Pinholster,* 131 S.Ct. 1388, 1403 (2011). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter,* 131 S.Ct. 770, 788 (2011).

"Ineffective assistance of counsel is a single ground for relief no matter how many failings the lawyer may have displayed." *Pole v. Randolph,* 570 F.3d 922, 934 (7th Cir. 2009) (citation omitted). Thus, *Strickland* requires that counsel's performance be evaluated as a whole rather than focusing on a single failing or oversight. *Peoples v. United States,* 403 F.3d 844, 848 (7th Cir. 2005). "It is essential to evaluate the entire

course of the defense, because the question is not whether the lawyer's work was error-free, or the best possible approach, or even an average one, but whether the defendant had the 'counsel' of which the sixth amendment speaks." *Williams v. Lemmon,* 557 F.3d 534, 538 (7th Cir. 2009).

To satisfy the prejudice prong of *Strickland*, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.

*Failure to Challenge the Indictment*

Tucker contends that trial counsel was ineffective for failing to file a motion to dismiss the indictment for lack of jurisdiction because it did not allege a single violation involving one kilogram or more of heroin. Unless a defendant can demonstrate that the indictment was defective, his counsel cannot be deemed to be ineffective for having failed to file a motion on that basis. *See Blake v. United States*, 723 F.3d 870, 885 (7th Cir. 2013) (regarding ineffective assistance of counsel claim based on failure to file motion to dismiss based on Speedy Trial Act violations).

Defects in an indictment do not deprive a district court of jurisdiction over the case. *United States v. Cotton,* 535 U.S. 625, 630 (2002). Any argument that a defect in Tucker's indictment was jurisdictional is foreclosed by *Cotton*. Additionally, Tucker has not shown that the indictment was defective. Count one of the superseding indictment charged Tucker and 14 co-defendants with conspiring to distribute one kilogram or more of a substance containing heroin, with a resulting death, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 846. (R. 74.) A drug conspiracy may encompass a

13

series of drug transactions, and those transactions may be aggregated when calculating a mandatory minimum. *See United States v. Rivera,* 411 F.3d 864, 866 (7th Cir. 2005). Tucker has not demonstrated that counsel failed to act reasonably considering all the circumstances.

*Sentencing*

Tucker also claims that counsel never reviewed the PSR with him. As a part of ground four, Tucker also states that counsel did not afford him effective assistance during sentencing, and that Tucker informed the Court of the problem. (*See* R. 537.)

An October 25, 2011, sentencing hearing was adjourned to allow counsel an opportunity to review the PSR with Tucker. (R. 535; 587, 3-4.) At the February 3, 2012, continued sentencing hearing, Judge Randa asked defense counsel whether he had talked to Tucker about the PSR. Counsel said he had, without comment or contradiction by Tucker. (R. 593, 2-3, 16.) The record therefore contradicts Tucker's unsupported contention. Tucker has not established that counsel was ineffective in such regard. Moreover, he has not demonstrated that the outcome would be different.

*Batson*

Tucker maintains that counsel was ineffective because he did not make a *Batson* challenge when the government used preemptory challenges to strike the only two black jurors from the jury. Tucker offers no factual support for this contention.

*Batson,* 476 U.S. 79, established that a prosecutor cannot use peremptory challenges to dismiss African-American jurors, unless he can provide a credible race-neutral reason for doing so. *Batson* establishes a three-step framework for challenging a peremptory strike. First, the defendant must make out a *prima facie* case that a strike

was exercised on the basis of race. *Id.* at 94. Second, the government must articulate a race-neutral justification for the strike. *Id.* at 97. Third, the trial court must determine whether the defendant has shown purposeful discrimination. *Id.* at 98. Tucker has not demonstrated a prima facie case that a strike was exercised on the basis of race. Moreover, to establish prejudice, Tucker would have to show that it is reasonably probable that his *Batson* claims would have been successful had they been raised at trial. Tucker has not made that showing.

*Pro Se Motions*

Tucker contends that counsel was ineffective because he did not file and/or pursue pro se motions that Tucker filed. Tucker filed a number of pro se motions and was represented by a series of attorneys from the time of his indictment through sentencing. Tucker has not shown that counsel's performance was deficient. Moreover, he has not shown that the motions, if filed and pursued, would have had a reasonable probability of making a difference in his case.

*Prosecutor's Improper Arguments and Presentation of Perjured Testimony*

In his pro se motion, Tucker contends that trial counsel was ineffective because he did not object to improper opening and closing arguments by the government (grounds five, eight and nine), and because he did not object to or attempt to correct the prosecutor's presentation of perjured testimony and counsel allowed the false testimony to goad Tucker into disclosing that he was incarcerated in early 2008 to refute the alleged false testimony (grounds six and seven). The government asserts that under the law of the case, which is applicable to § 2255 proceedings, Tucker cannot re-litigate

15

issues which were decided on direct appeal or in his motion for a new trial by attempting to reformulate them under the ineffective assistance of counsel label.

The Seventh Circuit has stated, "We hold that once this court has decided the merits of a ground of appeal, that decision establishes the law of the case and is binding on a district judge asked to decide the same issue in a later phase of the same case, unless there is some good reason for reexamining it." *United States v. Mazak,* 789 F.2d 580, 581 (7th Cir. 1986); *Daniels v. United States,* 26 F.3d 706, 711-12 (7th Cir. 1994). A Section 2255 motion is neither a recapitulation of nor a substitute for a direct appeal. *Daniels,* 26 F.3d at 711.

Tucker's complaints regarding the prosecutor's improper opening and closing arguments were raised and addressed on appeal. Since the court of appeals has already addressed and rejected those issues and determined that those arguments, even if improper, did not deny Tucker's right to a fair trial, the law of the case bars him from raising these issues again.

The prosecutor's alleged presentation of perjured testimony by McCormick and Silas was raised in a motion for new trial. (R. 630.) The motion was dismissed as untimely. (R. 650.) Tucker appealed. (R. 652.) The appeal was dismissed for failure to prosecute. (R. 668.) The issue was not addressed on its merits on appeal. Thus, the government has not established that the law of the case bars this basis for Tucker's ineffective assistance of counsel claim.

It is only when public officers connive or knowingly acquiesce in the use of perjured evidence that their misconduct denies a defendant due process of law. *Napue v. Illinois,* 360 U.S. 264, 269 (1959). In *Napue,* the principal witness for the prosecution

16

falsely testified that he had been promised no consideration for his testimony. The court held that the knowing use of false testimony to obtain a conviction violates due process, regardless of whether the prosecution solicited the false testimony or merely allowed it to go uncorrected when it appeared. A new trial is required if a petitioner establishes that (1) the prosecution presented false testimony or failed to disclose that false testimony was used to convict, (2) the prosecution knew or should have known that the testimony was false, and (3) there is a reasonable likelihood that the testimony could have affected the jury's judgment. *Griffin v. Pierce*, 622 F.3d 831, 842 (7th Cir. 2010).

Tucker claims counsel was ineffective because he failed to object to the prosecutor eliciting false testimony from Merritt. Tucker states that she testified she became reacquainted with him in March or April 2008, and that she sold Stuck some heroin. He states that Stuck testified he purchased heroin and crack cocaine from Merritt in February 2008.

Stuck's February 2008 date conflicts with the March or April 2008 date testified to by Merritt. However, Tucker has not explained how that conflict makes Merritt's testimony false. Merritt's testimony meshes with the March 2008 date of Tucker's release from custody. Tucker has not rebutted the presumption of counsel's competence.

He also asserts that counsel was ineffective because he failed to object when the prosecutor elicited perjured testimony from Ronsanta by asking, "But you never supplied [Silas] with any heroin, right?" (R. 584, 139.) Ronsanta responded "No, Sir." (*Id.*) However, Silas later testified that he had to go through Ronsanta when he first started purchasing heroin from Tucker. (R. 585, 58.) Given the overwhelming evidence

17

Case 2:14-cv-01303-LA   Filed 11/09/16   Page 17 of 25   Document 23

that Tucker was engaged in the heroin conspiracy, he does not explain how the prosecutor's question to Ronsanta could have affected the jury's verdict. Tucker has not shown he was prejudiced by counsel's failure to object to the question.

Tucker also maintains that counsel was ineffective because he did not object when the prosecutor allowed McCormick and Silas to testify incorrectly as to the date they first met Tucker and began to purchase controlled substances from him. However, under cross-examination by Tucker's attorney, McCormick admitted that he was unsure of the date that he met Tucker. (R. 585, 27.) Tucker's counsel also asserted that McCormick and Silas had testified falsely when they indicated they purchased heroin from Tucker in January and February of 2008, because Tucker was not released from custody until sometime in March. (*Id.* at 137-38.) Thus, Silas and McCormick's misstatements were exposed for the jury's consideration during the course of the trial.

Additionally, Ronsanta, McCormick, and Silas were not key witnesses for the prosecution — they were three of nine co-defendant witnesses testifying against Tucker, all of whom presented similar stories. Tucker has not established that he is entitled to relief with respect to ineffective assistance of counsel related to the failure to object to the alleged presentation of perjured testimony.

Tucker also asserts that counsel was ineffective, citing *United States v. Lawler,* 818 F.3d 281, 282 (7th Cir. 2016). (ECF No. 20.) In that case, defendant Jean Lawler pleaded guilty to distributing heroin and conspiring to possess heroin with the intent to distribute it. *Id.* The district court found by a preponderance of the evidence that Lawler sold the heroin that killed one of the conspiracy's customers. *Id.* On that basis the court determined Lawler's Guidelines-recommended sentence using U.S.S.G.

§ 2D1.1(a)(2), which applies if "'the offense of conviction establishes' that death resulted [from the use of the heroin]." *Id.* On direct appeal, Lawler argued that she was not convicted of causing the death of the customer, and therefore § 2D1.1(a)(2) did not apply. *Id.* at 283. The court of appeals held that the application of § 2D1.1(a)(2) was erroneous because the "'offense of conviction' — distributing heroin and conspiring to possess heroin with the intent to distribute it — [did] not 'establish' that a death resulted," and it vacated Lawler's sentence and remanded the case for further proceedings. *Id.* at 282.

Tucker's case is distinguishable from *Lawler.* He did not plead guilty. Rather, the jury returned a verdict finding beyond a reasonable doubt that he was guilty of conspiring to distribute one kilogram or more of a substance containing heroin, with a resulting death. *Lawler* does not provide support for Tucker's ineffective assistance of counsel claim.

*Failure to Investigate-1304 Motion*

Tucker contends that trial counsel were ineffective in failing to familiarize themselves with the facts and circumstances of his case; in failing to properly review the government's discovery; and in failing to recognize inconsistencies in the government's case that Tucker brought to their attention. He states that this extends to the failure to properly challenge government investigators, witnesses, confidential informants, and the testimony of his co-defendants who had plead guilty and testified against him at trial; the failure to investigate the criminal histories of the government witnesses to find impeachment material; and the failure to obtain and use post-arrest statements of co-defendants. (1304 action, ECF No. 2, 4-5.)

Case 2:14-cv-01303-LA   Filed 11/09/16   Page 19 of 25   Document 23

Tucker notes that the government did not respond to the claims raised in the 1304 motion and seeks summary judgment on those claims in his favor. (ECF No. 13.)

An attorney generally has a duty to adequately investigate the material facts in a case, and can render ineffective assistance by not conducting a reasonable investigation viewed from the attorney's perspective at the time. *See Rompilla v. Beard,* 545 U.S. 374, 380-81 (2005). A petitioner who claims that his Sixth Amendment rights were violated by his attorney's failure to adequately investigate, must provide "the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." *Richardson v. United States,* 379 F.3d 485, 488 (7th Cir. 2004).

The bulk of Tucker's contention is based on speculation that there were exculpatory witnesses or other admissible evidence that counsel's investigation would have revealed. Tucker fails to show that his attorneys did not conduct a thorough investigation, and even if he had made such a showing, he has not shown that the outcome would have been different. *See United States v. Ashimi,* 932 F.2d 643, 649-50 (7th Cir. 1991) (holding that to succeed on a failure to investigate or failure to introduce favorable evidence claim, "[the court] must know what the attorney would have discovered after 'adequate' investigation," and what the purportedly favorable evidence would have been at trial); *United States ex rel. Partee v. Lane,* 926 F.2d 694 (7th Cir. 1991) ("[A] habeas court cannot even begin to apply *Strickland*'s standards to [a failure to investigate or elicit testimony] claim unless and until the petitioner makes a 'specific, affirmative showing as to what the missing evidence or testimony would have been'").

Tucker has not established he is entitled to summary judgment on this portion of his ineffective assistance of counsel claim.

*Failure to Mount a Credible Defense and*
*to Object to Prosecutor's Statements-1304 Motion*

Tucker also maintains that his attorney failed to mount a credible defense, asserting that he failed to (1) interview or call as rebuttal witnesses individuals who might support his theory of defense, (2) object to hearsay statements of government witnesses, (3) offer meaningful cross-examination of government witnesses, (4) object to Baranek's dual capacity testimony, (5) object to the government's reference at trial and in opening and closing arguments to facts not in evidence, (6) properly impeach Silas and McCormick's testimony. (1304 action, ECF No. 2, 6-10.)

In large part these contentions are a recapitulation of the grounds raised and rejected on direct appeal. *Daniels,* 26 F.3d at 711. Furthermore, although Price was not called as a rebuttal witness, an offer of proof was made regarding his testimony. Thus, the latter two grounds raised by Tucker's 1304 action do not establish that counsel was ineffective and his motion for summary judgment is denied.

*Cumulative Effect of Errors*

In his pro se motion, Tucker also asserts that the cumulative effect of the errors attributable to trial counsel deprived him of his right to a fair trial. After carefully reviewing the record, and in light of the overwhelming evidence against Tucker, the Court finds that there is no reasonable probability that, but for the alleged errors of counsel in this case, considered in combination, the result of the proceedings would have been different.

21

*Appellate Counsel*

In his pro se motion, Tucker asserts that he was denied effective assistance of appellate counsel, relying on his current contentions that he had ineffective assistance of trial counsel. I infer that Tucker asserts appellate counsel should have raised such contentions on direct appeal. Tucker also contends that appellate counsel should have challenged the U.S.S.G sentencing enhancements imposed by Judge Randa and raised the failure of trial counsel to preserve objections.

The *Strickland* test is employed to evaluate the effectiveness of appellate counsel. *Suggs v. United States*, 513 F.3d 675, 678 (7th Cir. 2008). To satisfy the deficiency prong on appeal, Tucker would need to establish that his attorney ignored a significant and obvious issue, and that the issue counsel ignored was clearly stronger than an issue raised by counsel on appeal. *Id.* (citing *Strickland,* 466 U.S. at 694).

Tucker has not identified any sentencing enhancements that appellate counsel should have challenged or any basis for such challenge. Additionally, the Supreme Court and the Seventh Circuit Court of Appeals have stated that claims of trial counsel are best brought in a collateral proceeding. *See Massaro,* 538 U.S. 500, 504 (2003), *United States v. Stoller,* 827 F.3d 591, 598 (7th Cir. 2016). Tucker has not demonstrated that appellate counsel's performance was deficient.

**Other Motions**

Tucker has filed a number of related motions. The motion for recusal (ECF No. 17) is moot because Judge Randa is not presiding over this case. The motion to enlarge the record (ECF No. 20) is granted to the extent that I have considered *Lawler,*

818 F.3d at 281, and denied as moot in all other respects because the proffered documents are already part of the criminal record on file.

Also pending are motions for an evidentiary hearing (ECF No. 16), for discovery (ECF No. 19) and two motions for appointment of counsel (ECF Nos. 12, 18). "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley,* 520 U.S. 899, 904 (1997). Instead, under Rule 6 of the Rules Governing § 2255 Proceedings, a court may authorize discovery if "good cause" is shown. Good cause exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Id.* at 908-09 (citation omitted). "Good cause cannot exist where the facts alleged do not provide a basis for relief." *Matta-Ballesteros v. Henman,* 896 F.2d 255, 259 (7th Cir. 1990). For the reasons discussed above, Tucker's allegations provide no basis for relief, nor any reason to believe that discovery would change that fact.

Tucker's allegations also create no factual dispute that requires an evidentiary hearing. *Cooper v. United States,* 378 F.3d 638, 641-42 (7th Cir. 2004) (district court did not abuse its discretion in denying petitioner an evidentiary hearing where petitioner did not provide additional facts or assertions that would warrant a hearing) Furthermore, he has not established a need for appointment of counsel. Accordingly, his motion for discovery, a hearing, and appointment of counsel are denied.

For the reasons stated above, I deny Tucker's § 2255 motion.

23

**Certificate of Appealability**

When a court enters a final judgment against a movant, it must also issue or deny a certificate of appealability. Rule11(a), Rules Governing § 2255 Proceedings for the United States District Courts. A movant is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); 28 U.S.C. § 2253(c)(2). Under this standard, the movant must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (citation omitted). I find that reasonable jurists would not debate that Tucker's motion does not present a valid claim of denial of a constitutional right, or that the petition should have been resolved in a different manner. Therefore, I decline to certify any issues for review pursuant to 28 U.S.C. § 2253(c).

**THEREFORE IT IS ORDERED** that Tucker's § 2255 motion (ECF No. 1) is **DENIED**;

Tucker's motion for summary judgment (ECF No. 13) is **DENIED**;

Tucker's motion for recusal (ECF No. 17) is **DENIED** as moot;

Tucker's motion to enlarge the record (ECF No. 20) is **GRANTED** with respect to consideration of *Lawler* and **DENIED** as moot in all other respects;

Tucker's motion for an evidentiary hearing (ECF No. 16) is **DENIED**;

Tucker's motion for discovery (ECF No. 19) is **DENIED***;*

Tucker's motions for appointment of counsel (ECF Nos. 12, 18) are **DENIED**;

A certificate of appealability is also **DENIED**;

This action is **DISMISSED**; and

The Clerk of Court is **DIRECTED TO ENTER JUDGMENT** accordingly.

Dated at Milwaukee, Wisconsin, this 9th day of November, 2016.

s/ Lynn Adelman

_____

LYNN ADELMAN
District Judge